Good morning. 5-19-0-0-14. Monica Perez Williams v. The Workers' Compensation Commission. Counsel, you may proceed. Thank you, Your Honor. Good to be back again. May it please the Court, Mr. Sanchez, my name is Michelle Williams. I represent Monica Perez Williams in this case. We are here today because the Commission's decision in this case is contrary to law. It's also contrary to the evidence that was submitted at the time of the trial. The standard of review in this case, and we submit to you, as I mentioned in my brief, is de novo. This is an issue of whether my client was a traveling employee, whether her injury arose out of incurring the force of her employment. The relevant facts are not in dispute here. They're not in dispute? Is there some issue about whether or not she was, in fact, going where she said she was going at the time of the accident? Wasn't that disputed? Well, Your Honor, my client was the only person to testify at the time of the hearing. She testified unquotably that she was going to relieve her co-worker, but she had to pick up her shift. She was going to stop and get some lunch on the way. She didn't even make that turn. The arbitrator in her decision, which was adopted by the Commission, essentially took it upon herself to somehow conclude that my client was going in the wrong direction, but there was never any testimony elicited to that effect at the time of trial. And what I discussed in my brief is, even assuming that that is the case, that's not really a relevant fact here because she was, and the only testimony that we have is that she's on her way to do that, and there was never any contrary testimony elicited. Even if she's going in the wrong direction on the street, she didn't deviate from the route. She's on the same street she would have been. So I think that that's a red herring. I understand your point, and it's probably well taken, but you have the issue, however, that could bear on her credibility, could it not? Credibility is always going to be an issue here. If the arbitrator, as I recall, she was looking at the photographs, looking at the damage to the cars, the positioning of the cars, came to the conclusion, which was adopted by the commission, that she was not, her testimony was not truthful. So I don't know that that's irrelevant. Well, I think it's, like I mentioned, Your Honor, I think it's somewhat of a red herring that the arbitrator and the commission kind of went with on their own, and I don't think it's relevant in this case because she would have been on the same street that she would have been on otherwise. So I believe this merits a de novo review. However, even if you disagree with me on that, I think this is still contrary to the manifest way of evidence and contrary to the law. Well, and it's not going to turn on that, but I think it's whether or not this is a personal deviation and the impact of that is really the crux. So go ahead with your argument. Sure, absolutely. So one thing that the commission fails to do in this case is it fails to recognize a client as a traveling employee. As you know, there are special rules that apply to traveling employees when determining if they were in force to focus their employment, and if they were to be thrown out of that. And what the standard is is whether their conduct was reasonably foreseeable by the employer. So the conduct that my client was engaged in at the time, essentially, her commute that she does is pretty interesting, and I'm sure you've read it, but basically she has to drive her car to the garage in East St. Louis. She takes a shuttle to a Washington Park metro, and takes a train to Thinthin, Missouri, where she starts her shift. She then has an hour break in between her shifts. Her shift ends at Belleville, so then she has an hour to get back to the Thinthin, Missouri, station to start her second shift. So in between these two shifts is when the injury occurred. She's clearly off the clock. She's on a lunch break, is she not? She's on her lunch break, that's true, but she, in that lunch break, has to eat lunch and then also get from one station to the other. So that's the distinction in this case, and this is what makes her a traveling employee, is that she has to do all this commuting, and she's clearly continuously in the course of her employment throughout this time because she has to make it to a completely different station in one hour. And she's also benefiting her employer by taking her co-worker's vehicle to meet her at that station, and she testified that this is something that Metro knew about, and Metro acquiesced to. Metro never told their employees not to do that sort of thing, and this is similar to the Robinson case that I talked about in my brief. In that case, the individual was a traveling employee as well. The court determined that, and they overturned the commission's decision, actually, in determining that that was against the manifesto of the evidence. So the gentleman in that case, who actually died as a result of the accident, was going to check on a work site, and he was going to pick his son up before that and then take his son with him and then take his son Christmas shopping. So the commission, in that case, ruled against that individual, but the appellate court overturned the decision and testified. And by the way, in that case, it was essentially stipulated that the route that this gentleman was taking was not the most direct route to get where he needed to go. But the appellate court determined in that case that that was inconsequential and that case should have been compensable, and they overturned the commission on that issue. So in this case, the commission, in essence, ruled against your client because they found, adopting the arbitrator's reasoning, that when she was injured, she was in a purely personal deviation from the course of her employment. So how do you respond to that finding? She's off the clock, she's on lunch, she's going to lunch, she's deviating from her normal responsibilities. I don't think there's any evidence of that whatsoever. I think that that finding is completely contrary to the evidence that we have because the only evidence that we have, again, is her underlying testimony, that she's going to this other station to start her second shift and relieve her co-worker. Yeah, but she wasn't, at the time she was injured, she was on a lunch break. Correct? Right. So how does that enter into the mix? Isn't that a deviation? When you're not on the clock, she wasn't actually driving a bus when she was injured, was she? She wasn't driving a bus, no. But what the courts have said is that even if there is a deviation, if it's insubstantial, then it doesn't matter. So personal comfort doctrine also applies to this case because she... Wait a minute. She was not paid for the period of time between shifts. She was not working, period. You know, personal comfort doctrine, you're working, you go to the washroom, you go to the lunchroom, etc. In this particular case, the evidence was pretty clear that she was not paid for the period of time between her shifts. So even if one made the argument she was a traveling employee during her shift in the morning, she was a traveling employee during her shift in the afternoon, what makes her a traveling employee for the hours in between when she's not working? Well, the courts have said, Your Honor, that whether somebody's paid during that time period is not dispositive on that particular issue. It's not irrelevant. It's not irrelevant, but I find it hard to believe that anyone could not consider this woman to be a traveling employee based upon everything that she has to do. I don't think anyone will argue that she's a traveling employee while she's driving her bus. That's not a problem. The question is, is she still an employee, in the meaning of traveling employee, for those hours between her shifts? And this is not 15 minutes. Right, and I think pretty clearly she is, Your Honor, because she's not back at home. She is not somebody who is able to go home. Why not? Why can't she go home? Why can't she go home? She only has an hour in between her two shifts. 1.5 to 2 hours. Ma'am, 1.5 hours to 2 hours, not just an hour. And why do you say, how do you think the arbitrator characterized the claimant? You say, an error was made, she's a traveling employee. That's your claim. Correct. And yet, the arbitrator talks about deviation, right? She does. And I think that was against the evidence that was submitted. I don't think that was appropriate, especially in light of the fact that that testimony was never elicited from her at all by either party on direct examination or false examination. I think she took it upon herself to somehow make that conclusion, but I don't think it's supported by the evidence. And in that case, we know that the case law tells us that it can be based upon speculation or conjecture, and that's when a reversal is warranted in an instance like this. Because what we have is evidence that she was going to relieve her co-worker, also going to start her second half of the shift. We don't have any evidence otherwise that she was doing anything reasonably unforeseeable. I guess I totally don't understand exactly her work exactly. She shows up where first in the morning? She shows up to the garage in St. Louis where she parks her car. She parks her car. And from there, there's employer-provided transportation? She then next takes a shuttle to Washington Park Metro, and then she takes the Metro to the Fifth and Missouri Station where she starts her shift. Does she pay for those transportations? That was not elicited at the time of trial, so I don't know when it was. Okay. I'm just trying to figure out if this is an interesting job. So in other words, she does not have to drive. Once she parks her car, she's in the employ of an employer. Correct? She takes a shuttle and a train, which were, the testimony was that those were provided by Metro. Whether she has to pay for those, I don't know. Okay. When does she actually start work? When is she actually there to, quote, be working in a job? Well, she's a traveling employee, Your Honor, I think pretty clearly. So I think she's covered from the time that she leaves her house. And that's what the case law says, that she's covered from the time she leaves her house. Now, that's a conclusion you've come up with. I'm just asking for the facts. How we characterize her is the conclusion. I mean, that's what you're saying. There was an error. Oh, when is she paid? When she gets on to the, what, the train or the shuttle? When does she get paid? I don't think there was any testimony about that, Your Honor. We don't know a lot of facts that deal with that. Okay. So we don't know when she got paid. We do know that she's hired to be a what? She's a bus driver. And so that's pretty clear when she sits down in the seat and grabs the wheel, that she's probably doing her job, right? So we just don't know between parking her car and getting to the bus whether she's really an employee, do we? I think pretty clearly she is. Well, I don't know why it's so clear, but, I mean, we don't really know, do we? Because we don't know if she's paid for that time. We don't know whether the employer is providing transportation at that time. I mean, we don't know a lot of stuff here. Well, what we do know is that she is required to drive a bus. She has to take a bus. Where does she pick that bus up? Where does she walk into the bus? At the 5th and Missouri station. Okay. So theoretically she could have somebody drop her off at the bus. She couldn't. And that's when she begins her work, right? No. I don't believe that's correct. I think that she is a traveling employee, and the law says that those people are entitled to special protection under the law because they are required to go and drive a bus. I'm asking you, I know what you believe and et cetera, et cetera. I'm just asking for the accuracy of characterizing her as a traveling employee or the facts that suggest that. Where does her employment begin? I'm just asking that question. You say it begins the minute she gets out of her car and gets onto a shuttle. I think it begins when she leaves her house and gets in her car. Because that's what the case law says. That's what the case law says that when you're a traveling employee. Yeah, when you've concluded you are a traveling employee, then that's when you are considered to be an employee of an employer. Well, I think pretty clearly she meets that definition that we have of a traveling employee. Let's assume that she does. We're getting off on a tangent here. Even if she is a traveling employee, that doctrine is not without limitations. You have to concede. That's why you have the personal deviation rule. You can be a traveling employee and say, I've got three hours to kill and I leave the state to do a personal errand. It doesn't mean you're going to be compensated if there's an accident. If you concede, it has limitations. It does, Your Honor. So the prior case says that an injury suffered by a traveling employee is compensable under the act if the injury occurs while the employee is traveling for work, i.e. during a work-related trip. However, the work-related trip at issue must be more than a regular commute from the employee's home to the employer's premises. So that's the standard that we have. So this is certainly more than a regular commute from the employee's home to the employer's premises. Why is that? Why is it more than a regular commute? She drives her cargo bus station, takes a shuttle bus, a shuttle bus, she takes another train, and she arrives at work. Why isn't that a normal commute? Because the injury occurred, Your Honor, at a time when she had completed the first half of her shift. And what was she going to do when she left her first shift? What was she going to go do? Pick up a car for a friend? She was driving her co-worker's car to meet her. Is there a deviation from her employment, picking up a co-worker's car and driving to meet her? No, that's furthering the needs of her employer by benefiting them, by bringing her co-worker's car to her so her co-worker doesn't have to take additional transportation back. That's a bit of a stretch, don't you think? No, I don't think so at all. I completely disagree. I do. I mean, she's not being paid to go pick up her co-worker. She admits that for the one and a half to two hours in between the shifts, she is not paid. So she is going to pick up the co-worker as some type of a gratuitous thing for the employer? No, it benefits her co-worker, it benefits the employer. How does it benefit the employer, though? It benefits the employer because their employees get to save time. Their employees get to, instead of having to require her co-worker to go back to... Well, the employee would be off the clock when she ended her shift, so what does the employer care if the employee has saved time to go get her own car? I guess I'm assuming that they care about their employees and how they spend their time. Caring is one thing, but how does that benefit the employer? It streamlines the process. Not for the employer, though. She testified to that. Let's assume it benefits the employer. I think we're getting off on a tangent here. Actually, something that would help you would fall under the ambit of this rule. An exception exists for the commuting limitations. It says it applies for traveling employees whose injuries are compensable if the employee is injured while engaging in conduct that was reasonable and foreseeable. So that gives you a broader umbrella to argue. But here's the problem that I'm having with that. Forget about benefit. How would the employer... Is it reasonable and foreseeable that the employer is going to know that this woman is helping a co-worker pick up a car? How is that foreseeable? Because Metro knew about it, and she testified to that. That Metro knew that that was something that the employees did, and they never told them not to do it. If you testify to Metro... Wait a minute. What right would Metro have to tell employees what to do in the one-and-a-half to two hours in between shifts when they weren't on the clock? Why would they have any right to tell them what to do or what not to do? Show up for work when your second shift starts. That's the only thing Metro tells them. I think they could certainly put a policy in place to say, you have to take to Metro to get to your next stop. They could certainly do that. But did they do that in this case? They didn't do it. There's no testimony to that effect, is there? No, but I'm sure they could. I see my time has expired. You'll have time in reply. Thank you. Thank you, Mr. Court. Good morning, Your Honors. My name is Dan Sanchez, and I represent Bi-State Development Agency in this case. Just to quickly address a couple of the points discussed on the argument in chief, Ms. Rich cited the prior case with regard to the rules of traveling employee doctrine. Well, let's talk about this classification stuff. I mean, the split-shift thing, I mean, how are we to characterize that? Let me, I mean, does she work for the employer four hours, and then she has time, and then she goes back to work? I mean, this is an interesting concept. Exactly. Ms. Harris-Williams testified that she worked a split-shift, rather than characterizing this as a single shift with a lunch break in between. These are two distinct shifts with an unpaid lunch break of an hour and a half to two hours. I don't know of any hourly employee that would pass the clock out or goes off the clock that would get an hour and a half to two hours for a lunch break in a single shift. If you categorize this as a lunch break, I think you've just walked yourself into losing this case. Excuse my imprecise language. If this is a lunch break, and she is a traveling employee, then you've got a problem. If an employee is working for a company and doesn't get paid for the one-hour lunch break that they get, but they're injured in the employer's lunchroom while they're having it, you've got a personal comfort case, and he's going to recover. If this is a break, a lunch break, you've got a problem. If, on the other hand, she was not under the employee of the employer for the one and a half to two hours in between two totally separate shifts, that's something different than a lunch break. Correct, Your Honor, and I don't believe that the traveling employee doctrine would apply in this case to extend the period, of course, the scope of employment for the whole duration of these two separate shifts and the non-work-related time in between those two shifts. The prior case discusses that a traveling employee generally would be in the course of employment from the time she leaves home until the time she returns. However, as Ms. Rich stated, a commute is not encompassed in the traveling employee doctrine, and whether she realized it or not, she described it herself as a commute between the first shift and the second shift, but certainly between the time that she got the co-worker's car and took it to get lunch and then intended to go to the 5th and Missouri Metro station, she described it as a commute, which is exactly what it was. It may not have been from the employee's home to start her second shift, but it was more akin to a commute in terms of the purpose of the travel than serving any benefit or purpose of her employment, which the essential elements of that travel would be driving a bus to pick up and drop off passengers. Is she prohibited at any time from during this hour and a half to two hours, which I think the record will show was her testimony, from going to the shopping mall or going home and fixing her own sandwich? There's no testimony as to that fact, but she said that she was not on duty, she was not being paid. There's no evidence to suggest that there was any control of the employer during that period of time. I think we can all agree on the question I think that Ms. Fritz tacitly considered. She was on a lunch break, she was not being paid, she was not on the clock when the accident happened. But what about her argument that if the employee is injured while engaging in conduct that is reasonable and foreseeable, that is defined as conduct that might normally be anticipated or foreseen by the employer? So she's trying to hang in there on the grounds that she says, and you can answer this, that the employer knew that she was picking up people, they encouraged that. So is that followed in the end by it being something that's reasonably foreseeable? I wouldn't say that Metro encouraged the practice of co-workers taking each other's cars to meet them at the bus stops. But I would say that the conduct that's reasonable and foreseeable still has to be in furtherance of the objectives of the employer. It has to be while they're performing their duties that they can do those things that are reasonable and foreseeable and that would fall within the realm of compensability. But generally, when you're not furthering the objectives of the employer and you're not on the clock, performing any duties related to your job, that would not leave the employer to be liable for injuries during that time period. How do you define split shift? How would I personally define split shift? Yeah, what's the common definition of a split shift? Off the top of my head, I would say it's two distinct separate shifts with a period in between. Okay, well, there are people that used to do it years ago. You'd work the first shift and you might work the third shift at a coal mine, for example. Okay? And then the time in between, you might be at a bar. Who knows? Okay? Okay, so it seems to me that it's somewhat similar, isn't it, in the split shift concept? I don't think that you're in the employer of your employer during that second shift period of time. You would be in the employer of your employer for the time of those two shifts but not for the time between those two shifts. Well, that's why I'm wondering if this is akin to that when you start to talk about split shifts. Because it seems to me, how many shifts does Bi-State have? I don't know. If you take the normal, it looks like she's working the first shift and then working the second shift. Each shift might have four hours, four and a half hours. And then a third shift. Do they run 24 hours? I'm not sure. I believe the two shifts combined would have been about 12 hours. Well, I know that, but I'm wondering, do they run three shifts 24 hours? I do not know. Counsel, did you address the issue as to whether or not she's a traveling employee at all? Yes. I've argued that she is not a traveling employee. Like I said, under the prior case, which I think is the most instructive, this is a case that involved a truck driver that delivers cars with an 18-wheeler. He was injured when he was loading his car, his personal car, at home for the overnight trip. The reason his injuries were deemed not compensable, even though travel was an essential element of his job generally, was that he had not yet embarked on that work-related travel at the time he was injured. He was at home loading his car, and he had not yet taken control of his truck to begin delivering those cars. Much the same in this case, the employee, Ms. Harris-Williams, had not yet taken control of her bus to begin her routes to pick up and drop off passengers. The travel to get there is simply a predicate to starting those job duties. They are not job-related activity that would bring this and make her injuries compensable. So you're keeping it simple. You're saying that unless she's behind the wheel of a bus, it's not compensable? Generally, yes. What about when she's behind the wheel of the bus? You do concede that during those two shifts that she is a traveling employee. Sure, yes. If she's performing the duties of her job as a bus driver, that would have been compensable. Okay, we've talked about foreseeability of the employer. What about the fact that this individual is compelled to get from point A to point B to complete or to begin the second shift? What does that do to the analysis? Yes. So we actually cite the Walmart case in our brief. That case held that the mere fact that the duties take an employee to the place of the injury and that but for the employment, the employee wouldn't have been where she was. What duties of the employees took her to the place of the injury? Her first shift ended where? First shift ended in Belleville. And where did her second shift begin? Second shift began in East St. Louis. Okay. So she's got to travel from one to the other? Correct. So you're saying that the travel is not encompassed within her traveling employee status? Correct. You sure about that? Doesn't she have to get from point A to point B? Yes, but from the time she finished her shift in Belleville and then she takes the Metro train back to Washington Park and takes the Metro shuttle from Washington Park to the Illinois Garage. That is her simply commuting back to start her second shift. She's on the train with every other passenger that's riding the Metro train that day. And so it's akin to a commute. She's not fulfilling the duties of her job. And again, under the Walmart case, simply her job bringing her to Belleville and then having to be in East St. Louis to start her second shift, the fact that her job brought her to those places and that in the interim she was injured while driving her co-worker's personal vehicle does not make her injury potential. So conceptually I can see that you're following my suggestion that there's a first shift and a second shift. How long, you as the employer, when did you start paying this person? I don't know when she begins being paid. She testified, the employee testified that during the one and a half to two hour period between her shifts she was not being paid. When does she first park her car and go to this? Okay, first of all, all this transportation that she's taking to get to the bus in the morning is your employer, is that correct? Yes, but it's also public, equally available to the public. So it is. Is she instructed to take that means of transportation to get to the bus? No, I don't know if she was, I don't believe she was instructed. There was certainly no evidence or testimony from the employer. So she could be dropped off at the bus somewhere down the road after having taken the shuttle and the train to where this bus is? Based on the evidence and the testimony, there's nothing to dispute that conclusion. That she could just be dropped off by somebody? Anybody. You used the word I can. So with the word commuting, isn't there an element to a commute that one goes to work and then returns home? What's your definition of commute? And then you said the commute and akin in relation to the prior case because the rule as stated in prior was that a traveling employee is in the course of their employment from the time they leave their home until the time they return home that day. However, that case also states that a commute is not encompassed in the traveling employee doctrine. Even if one assumes that traveling from one place to another, she ended the first shift and started the second shift, the traveling was an act that was within the contemplation of the employer, was the going to pick up the co-worker's car a deviation? And the accident occurred while she was driving the co-worker's car, did it not? Correct. So was the going to pick up the co-worker's car something within the contemplation of the employer? It was something that the employer, by Ms. Harris-Williams' testimony, the employer was aware that this was a practice that occurred with some employees. It was not a practice that was explicitly endorsed or encouraged by the employer. But they had knowledge of it at least, right? They had knowledge of it at least, right? According to Ms. Harris-Williams' testimony. One of the things, the problems I'm having is you're conflating the commuting rule, which restricts compensability with the traveling employee. The general rule is that an injury occurred by the employee and going to and from the place of employment does not arise out of it, okay? But the law then goes on to say, and I quote, an exception exists for traveling employees where injuries are compensable if the employee was injured while engaging in conduct that was reasonable and foreseeable. You're saying that if she ends up, her shift ends and she's on the other side of town, going back to the place of her employment is simply another commute back to work. I don't know if that applies in the traveling employee, but he's on to a good question, and that is, and I think he tried to candidly answer it, it's different when the employer somehow knows about or acquiesces in this conduct while she's still in the course of her daily duties. I believe that the prior case does state that. The prior I thought was about a commute going to work, which we all agree in the morning, your morning commute, even if you're a traveling employee, you've got to start at point A. That's not compensable because you haven't started your work day. She actually started her work day and was in between shifts when this happened. And I think the thrust of the argument in prior, though, and the rationale for why the injuries were not compensable was because they looked at the purpose of the travel, and the purpose of this travel between the first shift and the second shift was not to further the objectives of the employer. It was more akin to a commute. Now, I acknowledge that this fact pattern does not precisely fit with any of the cases that were cited by either of the parties. However, when you look at the purpose of the travel and the purpose of the traveling employee doctrine, was this travel more akin to a commute, or was it more akin to her essential job duties of driving a bus? One final question. Her testimony that she was doing this with the under-encouragement, or knowledge at least, of the employer, that testimony was on the bucket, right? Did anybody challenge her testimony that the employer authorized this and was aware of it? No. Okay, let's start, okay, as I see it conceptually. You bought into my trail there that there's two shifts, okay? But it says split shift. Split shift implies one shift. So when, you can't tell me because the record's devoid of this apparently, when she starts work and when she, quote, ends work. So can you tell me? Well, I can tell you that she was off duty. She herself testified that she was not on duty from the time she entered her first shift to the time she entered her second shift. Okay, but let's assume that we don't have two shifts. We split a shift. Linguistically, that's one shift. How many hours from, is she on the clock that day, given today, for example? How many hours was she on the clock? No, how many hours, yeah, okay, how many hours was she on the clock? It would have been, I believe it was around 12 hours. 12 hours from the day she got to this place in East St. Louis, parked her car. That she was on. Okay, after she gets off the bus that second time that she's driving, then she takes that same train and shuttle back to her car at the parking garage? At the end of her day? Yes. Yeah, well, she did not testify whether another employee was going to meet her there or whether she would go back to the Illinois garage. She didn't say. Okay. I see that my time is up. Your time is up, yes. Thank you, counsel. Thank you. Are there two shifts or one shift? There is one shift, a split shift, and that's what she referred to. And what's the length of the shift in terms of hours? Totally about 12 hours. So she gets there, she's at the garage about a little before 5 in the morning, and her shift ended at 5 o'clock in the afternoon. Okay, so assume it's one shift and she's given an unpaid lunch hour, right? Right. Okay. And that's the way you're characterizing this. I think that's what the evidence shows. Well, yeah, that's what you're characterizing. The evidence is self-evident. Okay, so why when she is rear-ended in a co-worker's car is this a compensable accident? Because she had to get where she was going anyway. She was in her co-worker's car doing something for her co-worker. Well, that's a real stretch on this doing something for a co-worker. Sure, but she also had to get where she was going anyway. She had to make her way. The finding was she was going in the wrong direction. Isn't that what the arbitrator found? That's what she found.  I think that's what she did. Well, the arbitrator based it upon arrows in an accident report. The arbitrator based which direction she was going in based upon a vehicle operator accident report and an arrow indicating the direction east and the left drawn, et cetera, and so on, and came to the conclusion that based upon those errors she was going in the wrong direction. She wasn't going towards work. She was going away from work. I know that's what she concluded, Your Honor, and I already have talked about why I don't think that's the case, and I also discussed why I think that that's a positive outcome. Are you saying she's directionally challenged as a bus driver? I don't think you want to say that on the record, do you? Well, either that or the police report was incorrect. So did you answer the question? I think so. The question was, to some extent, the fact that she's compelled, now I'm paraphrasing, she's compelled to get from a split shift from one shift to another shift. Right. And you've admitted she's not being compensated for that period of time. With those issues, how is this compensable? She's not being compensated, but it's foreseen and she's compelled. Well, that's what the reports tell us, is that traveling employees are considered to fit this definition. It presupposes that in this period of time, she is still considered a traveling employee during those two hours. She herself said she did not consider herself on duty. You know, the normal traveling employee is a truck driver. He's over the road. He's going from Springfield to St. Louis, Missouri. And in between, he's got to stop for lunch while he's still in transit and while he's being paid. And he gets rear-ended. It's compensable. There's no question about it. He's a traveling employee. But in this particular case, she testified, number one, she was not paid for the time between the shifts. And number two, did not consider herself to be on duty. Well, Your Honor, the definition of a traveling employee is one whose work duties require him to travel away from his employer's premises. And I think pretty clearly she fits that definition. Ma'am, every one of us has to go to work. We're not considered traveling employees just because I go from my house to my courthouse. Right, but you don't have to make all these stops that she has to make and take a train to get here and take a shuttle to get there and then get from point A to point B in the middle of the workday. And that's why the law allows us to protect those people as traveling employees throughout their day. Your opponent will say that's nothing more than a commute. He is incorrect about that. The commute is clearly not from her home. That's not what this is. This is a split shift, a lunch break. But you made the argument that she was a traveling employee from the time she left her house. I think that's what the law says, Your Honor. But that rule usually applies to the plumber who's got the plumbing truck and all the goodies in the truck, parked at his house, and he drives to the first job in the morning. It is not the guy who gets into his car and then drives to his place of business, then gets an assignment and leaves the place of business to go do the work. The commute from the house to the place of business is not part of the traveling employee protection. Sure, so even assuming that you and I agree on that, the accident did not happen at the beginning of the workday. And that was one of the points that Your Honor just raised just a few minutes ago. This was in the middle of her work. This was not her commute when she wakes up first thing in the morning. I think you did that for the case. And yes, I don't think perhaps this would be a compensable claim. This was in the middle of her day, and that's why this is compensable. Maybe it's subtle, but you've got two hurdles to overcome. First, is she a traveling employee? Let's assume you overcome that hurdle, and we think that she is. Okay. The problem you have at the end where we began is this finding of the arbitrator. The fact finder made a finding. If it was true, and we concede everything you say is accurate, if she is not going back to work on the route she said she was taking and they find that was not the case, that becomes a personal deviation. Even under the traveling employee doctrine, you lose. Would you concede that? I agree, and I agree she was not trying to deviate. I think the evidence shows she was not on a deviation, and even if you do find that she was going the opposite direction, clearly, according to the Robinson case, even when that's the case, it's still compensable. It doesn't matter if it was not the most direct route. Well, the opposite direction would have—I suggest you have the problem. She's going the opposite direction into one place. Your time is up. Thank you. Thank you, counsel, both, for your arguments in this matter. It will be taken under advisement.